Good morning. May it please the court. Mr. Romero, my name is Bill Stanton and I represent Juan Frias. Mr. Frias pled guilty to possessing 382 grams of heroin with intent to deliver. After the district court determined he was responsible for 33 kilograms by way of relevant conduct and determining that he was not entitled to acceptance of responsibility, Frias was sentenced to 120 months in prison. Which was a below guidelines sentence, as I recall. It was 31 months below the guidelines, correct. Frias appeals that sentence, arguing that the determination of relevant conduct was erroneous and the concomitant denial of acceptance of responsibility credit was improper. Now the district court judge largely bases her assessment of relevant conduct on Mr. Frias' own admissions to the two investigating officers, doesn't she? She does, Judge. I think there's three sources of information that are relied upon by the government and by the district court. There's two co-conspirators or informants of Mr. Reyes and Mr. Lopez, and then there is a purported statement given by Mr. Frias to two federal agents in his basement during the execution of a search warrant. But of course there's no bar at sentencing on using, this is obviously a statement of the defendant, but hearsay is okay at sentencing second or third hand statements. Wasn't that a question for her simply to assess both the reliability and the credibility of the agents? Judge, I think if we look at the reliability here, these evidence has to have a sufficient indicia of reliability. Well they were reporting what he told them. Why wasn't that reliable? Especially when he doesn't testify and say I never said that. He testifies and states, he doesn't testify, he states an elocution. That's right. I don't agree with what the statements that the agents attributed to me essentially. And I think the best indication... But don't you think that's kind of a weak denial? I mean if the agents are giving this information about the 15 to 20 kilograms of cocaine within the past half year, multiple additional shipments of 2 to 3 to 5. I don't think it was based on the circumstances of this case. Mr. Frias had dual indictments. He was indicted down here, he was indicted up at Michigan as well. On the day of sentencing he learned that the Michigan indictment was going to go away or be dismissed after he was sentenced in this case. Now the District Court did give him a little bit of time to discuss that with his attorney. I believe it was a 90 minute break. But after that Mr. Frias did decline to testify. He just decided to address the court in elocution. I think that was sufficient enough, his statement in elocution combined with counsel's cross-examination of the agents at sentencing, counsel's arguments in the provided a sufficient denial that the statements were in effect. That's enough to destroy the credibility of the DEA agents? I think the DEA agents destroyed their own credibility. If you look at the advice of rights form, which I believe is page 38 of my appendix, there's an advice of rights form that lists every single right that supposedly was given to Mr. Frias on the date that he allegedly made the confession. And they didn't initial every one? They didn't initial any of them. But he signed it. He signed it. It was signed by a person named Juan, not Juan Frias. Well, we don't know. Did you put on testimony to show anything with regard to the execution of that document? There was a cross-examination of the agents in regard to the execution of the document. I ask you, did you put on any witness? The defense did not call any witnesses at the sentencing hearing. However, you have two law enforcement agents, two federal agents with combined more than 40 years of experience, one of whom testifies that they don't know how to fill out an advice of rights form, and I think the reliability of that testimony is clearly called into question. Why couldn't the judge have looked at the form, see the signature, Juan, that's his name, Juan, and say, you know, maybe the officers didn't bother to tick off every box, but we do have their testimony that they informed him of his rights, and we have at least that much confirmation, and make a finding of fact that he was informed. I think based upon the testimony of the agents themselves, I don't think that would have been a credible determination to make. Two agents saying they don't know how to fill out an advice of rights form, two agents who say they never take written statements from defendants, never record statements from a defendant. I mean, this statement wasn't video recorded, audio recorded? Well, they were in the basement of the house, right? Okay, so have Mr. Frias write out a statement and sign it. Show Mr. Frias your notes and say, these are the notes of what we just discussed. Do you agree with this? Do you have any corrections? Do you have any additions? Do you have any deletions? I don't understand where in the law we got to the point that human memory is not competent evidence. Maybe it's better when you have the notes, or when you've got a stenographer with you, you have other notes, but surely it's competent evidence for the two agents to say, we were standing there talking to him about this, and this is what he said to us. How do we know that? Because we remember it. I think if two agents say that we had this interview, one of us took notes, one of us didn't, the individual that took those notes two or three weeks later typed them up into a report. I don't think that's a strong indication that what was said on the date in question was accurately recorded and accurately recalled four years later at a sentencing hearing. Wouldn't the judge have been aware of whatever weaknesses you perceive in that system as well? I'm sure you pointed them out. I think that the judge disregarded them and we think that that was erroneous to do so. Or rejected them. There's a difference between disregarding it and rejecting it. Correct. We believe that they were erroneously disregarded. Now in addition to statements being reliable, there must be a showing that the charged and the uncharged conduct was similar, regular, and temporally proximate. And I believe the district court touched on this very tersely when she said, I find that the conduct was the same and involved the same people. Now this court has held that there should be... By the way, did they find heroin in the garage? They found heroin in the garage. They found no cocaine anywhere. And he was, 20 kilograms of cocaine were attributed to Mr. Frias and an additional 13 kilograms of heroin were attributed to him. So he's a believer, but he's believable though when he says they were lying about the host. He's believable when he disavows the statements that were attributed to him. Now similar, regular, temporally proximate. I think the district court said the conduct was the same, the people involved were the same, so the government has established the relevance here. And I think that there needs to be an explicit mention of that on the record, which I produced the record, I don't find that, or there needs to be a written statement of reasons that the unconvicted acts bore the necessary relation to the defense of conviction. And simply put, there was no written statement issued by the district court. I think her statements on the record did not touch upon this sufficiently, and because of that I don't think the relevant conduct was shown to the degree that the government needed to do so. I see that I'm entering my time for rebuttal. There's no more questions. You may save it. Thank you. Ms. Romero. May it please the court, my name is Jessica Romero and I represent the appellee of the United States. The district court's drug quantity finding was, as the courts already identified, based on reliable, credible, and unrebutted evidence presented to the sentencing hearing. The district court... Can I direct your attention to the connection between this relevant conduct, the alleged relevant conviction? The court's very summary about that, and seems to think at any time it's the same drug, same people, automatically you have relevant conduct. And I think that's an overstatement based on the case law. You could have, you know, one cocaine conspiracy and in some other area a completely different cocaine conspiracy, even if it's the same people, in part, involved with it. So why isn't that a particular case begins with the probation officer's analysis of the relevant conduct factors under the application note, and that's specifically in pages 7 through 8. Are you looking at common scheme or plan, or are you looking at same course of conduct? The probation officer identified it as both, and I actually think that that's correct. That the substance of the testimony of the same customer, Mr. Reyes, who he had supplied for approximately five to six months, and there was no real distinction in terms of the locations that the distributions took place, any other purported co-conspirators, methods of distribution. So I think in this particular instance, based on that testimony, both, it could be considered under either same course of conduct or the other factor is identified in the guideline. And I do think also that the district court correctly identified some of the factors. She didn't go through all of them as in detail as the probation officer did, and that's correct, but she also wasn't really in a position where she was challenged specifically on that, either in the briefs or in the arguments at the time. So I think her comments were appropriate in light of the way that the issue was presented and addressed at the sentencing hearing itself, but it's consistent with the record as a whole, which is much more comprehensive in support of the finding of relevant conduct. So you would, your basic position then is that she isn't just relying on these two factors, that there's more. I think those are the two she cited verbally, but certainly that the record supports that there were additional factors, and the PSR specifically addresses that. If there are no further questions, for the reasons I just discussed and those set forth in our brief, we ask that the district court be affirmed. Thank you. All right, thank you very much. Anything further, Mr. Stanton? As it relates to the probation officer identifying some factors, the record is not clear that the district court ever stated, I'm adopting the probation officer's findings as relates to common scheme or plan, or I'm adopting those findings as relates to same course of conduct. I think the record is silent on that, and without the district court issuing a written statement in this case, I think we are left wondering how the district court tied these two offenses together. As it relates to acceptance of responsibility, I know I touched on it because the two arguments go hand in hand, but we feel that Mr. Frias, by sufficiently accepting blame while denying the drug quantity in this case, he did sufficiently... But the district court thinks that's sort of a frivolous refusal to acknowledge relevant conduct, which if so, it seems like that's a finding of fact, which if so, does not lead to acceptance of responsibility. Well, he didn't commit obstruction of justice, he filed the plea declaration, he didn't go to trial. But he did deny his involvement in the broader business, so to speak. He did, and up until that day, he was under the impression that he would face those charges at a later date up in Michigan. So based upon the statements that he made, the conduct that he undertook, we feel that he sufficiently accepted responsibility and should have received those three points. Okay, thank you very much. Thanks to the government. We'll take the case under advisement.